IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN W. PICKFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-CV-4217-JPG |
| | ) |
| BOARD OF TRUSTEES OF | ) |
| SOUTHEASTERN ILLINOIS | ) |
| COLLEGE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on defendant Board of Trustees of Southeastern Illinois College's ("Board") motion for summary judgment (Doc. 23), to which plaintiff John W. Pickford ("Pickford") has responded (Doc. 27). For the following reasons, the Court will **GRANT** the Board's motion and **QUASH** Pickford's writ of certiorari.[1]

**I.     Procedural History**

Pickford filed this action in state court on December 12, 2005, seeking review of the Board's

---

[1] Pickford did not seek a remand of this case, so the Court was never squarely presented with the question whether it has jurisdiction to hear this case. As the Court has an independent duty to address its jurisdiction, the Court has considered the question. In *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997), the Supreme Court of the United States addressed whether a defendant properly removed an Illinois state court action arising under the Illinois Administrative Review Act raising federal constitutional challenges to, among other things, the manner in which an administrative tribunal conducted its proceedings. Though the federal question claims "were raised by way of a cause of action created by state law . . . the Illinois Administrative Review law," the Court found that the plaintiff's constitutional claims "unquestionably" arose under federal law. *Id*.; *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 359 (7th Cir. 1998). Given the similarity between common law certiorari and review under the Illinois Administrative Review Act, the Court finds the Supreme Court's decision in *International College of Surgeons* compels the conclusion that this Court has jurisdiction to hear this case.

decision affirming his suspension with pay during an investigation of a student's claim of sexual harassment. Pickford's stated basis for relief was the Illinois Administrative Procedure Act (the Act). *See* 5 ILCS § 100/1 *et seq.*, 735 ILCS § 5/3-101. After it removed this case, the Board moved for dismissal, claiming its decision is not subject to review under the Act. *See* 735 ILCS § 5/3-102. The Court denied the Board's motion on its finding that Pickford could seek review through common law certiorari. *See Thomas v. Chicago Park Dist.*, 227 F.3d 921, 926 (7th Cir. 2000); *Smith v. Dep't of Public Aid*, 367 N.E.2d 1286, 1293 (Ill. 1977).

## II.   Background

On September 2, 2005, Pickford was working as a Campus Security Officer for Southeastern Illinois College ("College"). That day, Jordana Pulliam (Pulliam), a student at the College, complained to Tim Daugherty, Dean of Student Affairs, that Pickford made a sexually suggestive comment about her and watched her as she worked out in the College Fitness Center. Specifically, Pulliam told Daugherty she thought she heard Pickford say, "I have nothing better to do than to just sit and watch . . . this lady . . . workout," and that he watched her for about 30 minutes (Bd. Mtg. Tr. at 11) (hereinafter Tr. __). After speaking with Pulliam, Daugherty relayed her complaint to Pickford's supervisor, Brad McCormick, the Dean of Business Affairs. Daugherty and McCormick then spoke with Pulliam again. In this second meeting, Pulliam repeated her allegations and told the Deans she spoke to Kyle Herring, the Fitness Center aide, who told her he did not hear Pickford make the comment. At this time, Pulliam filed a formal, written complaint.

After speaking with Pulliam, McCormick and Daugherty spoke to the College's Director of Human Resources, Bonnie O'Neill. O'Neill, McCormick, and Daugherty discussed Pulliam's complaint and reviewed the Board's sexual harassment (Board Policy 6002) and suspension policies

(Board Policy 4011) to determine the appropriate course of action. Daugherty and McCormick concluded that Pulliam's complaint implicated the Board's sexual harassment policy. Given Pickford's alleged actions and Pulliam's condition – McCormick and Daugherty felt it obvious she had been crying and was scared – McCormick decided to suspend Pickford with pay while he and Daugherty conducted an investigation. After coming to this decision, McCormick and Daugherty met with Pickford in his office and informed him that the College was suspending him with pay while they investigated Pulliam's complaint.

Daugherty and McCormick claim Pickford admitted during this meeting that he was in the fitness center for approximately 30 minutes and that he made the statement of which Pulliam complained, but in reference to a different woman. During the hearing on his appeal, Pickford disputed this account. In any event, McCormick memorialized this meeting and reaffirmed the suspension in a written letter to Pickford. The letter explained that the suspension was to last until September 12 and informed Pickford of his right to appeal his suspension to the Board.

During their investigation, McCormick and Daugherty met with Herring and Herring's boss. Herring told them he did not hear Pickford make the remark about watching Pulliam. He did confirm, however, that Pickford remained in the Fitness Center for about 30 minutes. Without a confirmation of Pulliam's account from Herring or any other evidence, McCormick concluded that he could not substantiate Pulliam's allegations. Accordingly, he called Pickford on Tuesday, September 6, 2005, and told him to report to work the following afternoon. Pickford returned to his normal duties the next day. McCormick placed nothing in Pickford's file concerning the incident; he also stated he is unaware of any mention of the incident or the suspension in his record. Because – in McCormick's view – the investigation disclosed that Pickford lingered in the Fitness Center for

30 minutes without a work-related purpose, McCormick issued Pickford a written reprimand.

Pickford appealed his suspension to the Board, which the Board heard at its regularly scheduled meeting on October 18, 2005. At this hearing, both the administration and Pickford were represented by counsel. The parties made opening statements, presented witnesses, cross-examined witnesses, and made closing arguments. The College called Daugherty and McCormick and Pickford's counsel called the College's president and Pickford. Pulliam did not testify.

The Board denied Pickford's appeal in a letter dated October 21, 2005. It concluded, "Based on our review of the facts, documents and evidence . . . we have determined that the College administrator was legally required to investigate the sexual harassment charge filed against you." (Doc. 2 at 5). The Board affirmed "the administrator's finding that there [was] insufficient evidence to prove that [Pickford] engaged in sexual harassment . . . [and] determined that the administration acted appropriately and within its authority when it suspended" Pickford with pay while it conducted the investigation. (*Id*.).

Pickford faults a number of aspects of the investigation and the disposition of his appeal. In his complaint, he alleges the "sexual harassment complaint was unsubstantiated, defamatory, and did not meet the legal definition of sexual harassment." (Compl. at 2). Because a student was involved in the incident, he maintains the administration should have followed the procedure for sexual harassment contained in the student handbook, which requires a student to discuss her problems with the harassing party before filing a grievance. (Compl. at 3). He also contends Board Policy 6002 violates Articles IV, V, and VI of the United States Constitution and the Illinois Human Rights Act. Pickford claims the College should have made Pulliam available at the hearing and produced her written complaint. Given the information presented at the hearing, Pickford maintains

that the Board should have dismissed the complaint, reversed the suspension, and expunged all mention of the incident from his record. Finally, Pickford contends the college reprimanded him, improperly transferred to a position with fewer hours and an unfavorable work schedule, and fired him because of this incident.

In its motion for summary judgment, the Board argues that its decision to affirm Pickford's suspension with pay pending the outcome of the student's complaint and its subsequent finding that Pulliam's complaint could not be substantiated, are supported by the evidence. It contends that there is no genuine issue of material fact left in this case and that it is entitled to judgment as a matter of law.

### III. Legal Standards

#### A. Writ of Certiorari

Common law certiorari allows a petitioner without a statutory right of appeal to obtain limited review of the actions of a tribunal exercising quasi-judicial functions. *Hartley v. Will County Bd. of Review*, 436 N.E.2d 1073, 1076 (Ill. App. Ct. 3d Dist.1982); *Rochon v. Rodriguez*, 689 N.E.2d 288, 291 (Ill. App. Ct. 1st Dist. 1997); *see also Smith*, 367 N.E.2d at 1293. The purpose of the writ is "to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether that body proceeded according to the applicable law." *Stratton v. Wenona Cmty. Unit Dist. No. 1*, 551 N.E.2d 640, 645 (Ill. 1990); *accord Rochon*, 689 N.E.2d at 291; *see also Finnerty v. Pers. Bd. of City of Chicago*, 707 N.E.2d 600, 606 (Ill. App. Ct. 1st Dist. 1999). The writ's "application is limited to obtaining review over a decision . . . where [a tribunal] has acted without jurisdiction, exceeded its jurisdiction or where it is shown that the . . . tribunal did not follow the essential procedural requirements applicable to the case[] before it." *Rochon*, 689 N.E.2d

at 291; *Hartley*, 436 N.E.2d at 1076.

### B. Standard of Review

The standard of review on a writ of certiorari is the same as under the Act. *Hanrahan v. Williams*, 673 N.E.2d 251, 253-54 (Ill. 1996). The reviewing court must deem a tribunal's "findings and conclusions on questions of fact . . . prima facie true and correct." *City of Belvidere v. Ill. State Labor Relations Bd.*, 692 N.E.2d 295, 302 (Ill. 1998). A court's function is not to weigh the evidence or substitute its judgment for that of the administrative tribunal – its review is limited "to ascertaining whether [the tribunal's] findings of fact are against the manifest weight of the evidence." *Id*. (citing *Abrahamson v. Ill. Dept. of Prof'l Regulation*, 606 N.E.2d 1111 (Ill. 1992)); *see also Stratton*, 551 N.E.2d at 649; *Hanrahan*, 673 N.E.2d at 254; *see generally Finnerty*, 707 N.E.2d at 606 (discussing the writ's history in Illinois). Factual findings are contrary to the manifest weight of the evidence "where the opposite conclusion is clearly evident." *City of Belvidere*, 692 N.E.2d at 302; *see also Robbins v. Bd. of Trs. of Carbondale Police Pension Fund*, 687 N.E.2d 39, 42 (Ill. 1997); *Kerr v. Police Bd. of City of Chicago*, 319 N.E.2d 478, 479 (Ill. 1974). A reviewing court should review decisions of law de novo and apply a clearly erroneous standard to mixed questions of law and fact. *City of Belvidere*, 692 N.E.2d at 302. Simply stated, "If the record contains evidence that supports the agency's decision, it should be upheld." *Robbins*, 687 N.E.2d at 42 (citing *Abrahamson*, 606 N.E.2d 1111).

### C. Scope of Permissible Relief

If a court finds that a tribunal followed the law, it should quash the writ; if the tribunal did not follow the law, a court should quash the result of the proceedings and all records thereof. *Stratton*, 551 N.E.2d at 645. A court has "no authority to entertain independent actions regarding

the actions of an administrative agency." *Id*. at 646 (citing *Dubin v. Pers. Bd. of City of Chicago*, 539 N.E.2d 1243, 1247 (Ill. 1989)).

**IV.    Discussion**

The nature of the Court's review in this case precludes it from addressing a number of the wrongs alleged in the complaint. Throughout Pickford's brief and complaint, he alleges that the College retaliated against him. He contends the Board, or the College's administration, has given him fewer hours and assigned him to inconvenient shifts since this incident. Though it is not clear, Pickford also appears to allege that the College has terminated his employment. Whether these allegations have merit is irrelevant, for the writ limits the Court's review to the propriety of the Board's disposition of Pickford's appeal.

For the most part, Pickford's remaining claims of error flow from Daugherty and McCormick's decision to proceed under Board Policy 6602. He claims they should have proceeded according to the grievance procedure outlined in the student handbook. Even if the application of Policy 6602 was appropriate, Pickford contends that Daugherty and McCormick failed to apply it faithfully because Pulliam's allegations did not fall under 6602's definition of sexual harassment.

Policy 6602 provides, in pertinent part, "Sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature constitute harassment when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's academic or work performance or creating an intimidating, hostile or offensive education or employment environment." (Tr. 105). The Policy provides representative examples of sexual harassment, including "Statements comments, jokes, questions, or anecdotes of a sexual nature that a reasonable person would find intimidating, hostile or offensive." (*Id*.). Under the policy, when "[a]n employee, student or other

member of the College community . . . believes . . . she has been harassed" she should report the incident to the President or designated administrator. (*Id.*). The Policy requires the administration to investigate all claims promptly. *Id.*

In denying Pickford's appeal, the Board concluded, "the administration acted appropriately and within its authority when it suspended [Pickford] with pay while it conducted the sexual harassment investigation." (Doc. 2 at 5). This statement is an explicit approval of McCormick and Daugherty's decision to treat Pickford's alleged actions as sexual harassment, to proceed under Policy 6602, and to suspend him pursuant to Policy 4011. These decisions, of course, color the Court's review.

Under Illinois law, the Court must deem McCormick and Daugherty's decision to treat Pickford's alleged actions as sexual harassment "prima facie true and correct," and affirm it unless the "opposite conclusion is clearly evident." *City of Belvidere*, 692 N.E.2d at 302; *see also Denton v. Civil Serv. Comm'n of Ill.*, 679 N.E.2d 1234, 1236 (Ill. 1997) (finding that an agency's interpretation of a statute it is tasked to enforce is entitled to considerable deference). After reviewing the record in this case, the Court cannot find that this conclusion was against the manifest weight of the evidence. Pickford's statement and conduct, when taken as true, can reasonably be viewed as sexual in nature, offensive, and potentially disruptive of Pulliam's educational environment. While this court has certainly been confronted with more brutish comments in other cases, the comment, coupled with the staring, is sufficient given the standard of review.

Pickford's primary contention is that Daugherty and McCormick should have proceeded according to the provisions in the student handbook, which set out a specific grievance procedure for sexual harassment. Under its terms, "Before a grievance can be filed, a student must discuss the

problem(s) with the person/persons involved and his/her supervisor. If the problem is still not resolved, the student may file against any employee or employees at [the College]." (Tr. at 100). Pickford's argument on this score is hazy, inasmuch as it does not necessarily undermine the Board's decision not to overturn the suspension. In their testimony before the Board, Daugherty and McCormick said they felt that Policy 6602 was the appropriate mechanism to address Pulliam's complaint. (Tr. 20, 43). Daugherty said he did not think the policy in the student handbook was applicable because the complaint was made by a student against an employee. (Tr. 20). While the student handbook clearly implicates employee/student harassment claims, it does not necessarily follow that its application was mandatory in Pickford's case.

Pickford maintains that the decision was clearly incorrect in view of the language of the student handbook. As the handbook directly speaks to complaints by students against "any employee . . . at [the College]," Pickford argues the provision is superfluous if it did not apply in this case. (Tr. at 100). The language of the policy clearly supports Pickford's interpretation. Nevertheless, the record demonstrates that the student handbook was not promulgated by the Board, (Tr. 23), and that three top College administrators concluded that Policy 6602 applied after consulting Board policies. The Board's ruling on the appeal, of course, ratified this decision. The standard of review makes the Court quite hesitant to second-guess these decisions.

Even if Pulliam should have complied with the provisions of the student handbook (*i.e.*, talked to Pickford), there was no clear evidence before the Board that compelled the conclusion that McCormick would not have suspended Pickford if she had. McCormick and Daugherty would have been required to investigate Pulliam's claim in any event, and Policy 4011 gave them the authority to suspend Pickford during the investigation. While, as the Court already noted, Pickford's alleged

conduct was relatively "tame," so was the administrative action taken against him – effectively a paid vacation. Policy 6602 and the testimony of administration officials demonstrate that the College takes a strong stance against sexually harassing behavior. (Tr. 15, 100, 105). In light of this, the Court finds it almost certain that McCormick would have suspended Pickford if Pulliam had gone to Pickford first. The Court cannot fault the Board's decision in this regard.

Pickford's last major point of error relates to his suspension under Policy 4011. The Board enacted this Policy "to govern discipline, including suspension, with and without pay, of all teaching and non-teaching personnel." (Tr. at 102). The Policy states, "Employees may be suspended with pay . . . during any Board or administrative investigation of conduct which may constitute disobedience or misconduct or as may be otherwise appropriate in the best interest of the college." (Tr. at 101). It requires the administration to provide "written or oral notice which shall specify . . . [t]he reasons for the suspension[, t]he date(s) and duration of the suspension[, and t]he employee's right to request a hearing to review the suspension before the Board of Trustees." (Tr. at 102). The Policy also requires a pre-suspension meeting between a member of the administration and the employee. (*Id*. at 102). There is no question that McCormick followed the procedures outlined in the Policy. But because the Board has characterized the Policy as a disciplinary measure, Pickford complains its application was inappropriate during the investigation.

Pickford's view of Policy 4011 is too narrow and overly reliant on hindsight. There can be no doubt that its prefatory language, and the policy as a whole, is geared toward discipline. That said, however, the policy contains a specific allowance for suspensions with pay during the course of an investigation into disobedience or misconduct. (Tr. 101). The Court has already found that Pulliam's allegations, when taken as true, implicate the Board's prohibitions on sexually harassing conduct.

In this light then, Pickford's characterization of the Policy is unreasonable. The Board's decision in this regard was not erroneous.

Pickford attacks the College's failure to provide him a copy of Pulliam's written complaint under Policy 4011 as well. Through selective quotation, Pickford argues that this provision required the College to present him with Pulliam's written complaint prior to his hearing. (Doc. 28 at 9). The language Pickford cites is included in the Policy under the heading, "Review Hearing Procedures." This section states, "Each party shall be afforded an opportunity to cross-examine all witnesses who testify and to examine all written evidence presented." (Tr. 103). When read in the appropriate context – *i.e.*, in a section detailing the procedures applicable to the hearing itself and a sentence speaking to the right to cross-examine witnesses – it is clear this right extends to documents presented at the hearing itself. As the College did not submit this statement into the record, Pickford had no right to review the evidence under Policy 4011.

The Court is confounded, as the Board was, about the reasons for Pickford's appeal. The investigation concluded that Pulliam's claim was unsubstantiated and Pickford lost no pay during the days he was suspended. During the appeal, Daugherty told the Board that Pickford's employment records contain no mention of Pulliam's complaint or of the subsequent investigation. Pickford has not offered any evidence contradicting this assertion. As such, the Court sees no reason whatsoever for the parties to be before it. Without any mention of the incident in Pickford's record, it is nearly impossible to fathom how the Board's decision to uphold the suspension had any tangible, negative effect. In any event, there is nothing in the record that suggests the Board came to improper conclusions.

As the Court mentioned, Pickford alleged in his complaint that Policy 6002 violates Articles

IV, V, and VI of the United States Constitution and the Illinois Human Rights Act. In his response to the Board's motion for summary judgment, Pickford complains of the Board's failure to provide him a copy of Pulliam's written complaint, to compel Pulliam's testimony, to disclose other witnesses, among other things. He fails, however, to provide any authority whatsoever supporting his legal claims. Because Pickford has failed to address these issues in his brief, the Court finds that he has waived these claims. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000); *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000).

**V.     Conclusion**

The Court hereby **GRANTS** defendant's motion for summary judgment (Doc. 23) and **QUASHES** the writ of certiorari. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: May 1, 2007.

 s/ J. Phil Gilbert
**J. PHIL GILBERT**
**U.S. District Judge**